# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:21-po-00583-SAB-1 |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL |
| v. | (ECF No. 23) |
| AUSTIN WRIGHT, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Currently before the Court is Defendant Austin Wright's motion for a new trial brought pursuant to Federal Rule of Criminal Procedure 33. Defendant argues the interest of justice requires the Court grant a new trial for two reasons. First, the Government's failure to provide a copy of Defendant's criminal history record violated Federal Rule of Criminal Procedure 16(a)(1)(D) and deprived Defendant of critical information that may have impacted his decision to go to trial. Second, the Court violated Defendant's right to a public trial and his right to be present when it issued its written memorandum decision following the bench trial in this matter rather than announcing its verdict and finding in a public setting. For the reasons explained below, any violation is either harmless or the only requested relief, a new trial, is not an appropriate remedy. Accordingly, Defendant's motion for a new trial shall be denied.

## II.

## BACKGROUND

On August 23, 2021, a citation was filed charging Austin Wright ("Defendant" or "Mr. Wright") with one count of violating 18 U.S.C. § 1382, entering military, naval, or Coast Guard property for prohibited purpose.  (ECF No. 1.)  On September 7, 2021, Defendant made an initial appearance and entered a plea of not guilty.  (ECF No. 7.)

A bench trial was initially set for March 4, 2022, before Magistrate Judge L. Thurston. (ECF No. 3.)  On February 1, 2022, this case was reassigned to Magistrate Judge Stanley A. Boone.  (ECF No. 6.)  A hearing was held on March 4, 2022, at which Defendant requested discovery and the Court ordered the Government to provide discovery within two weeks.  (ECF No. 8.)  A status conference was set for April 12, 2022.  (Id.)  On April 12, 2022, the Court held a status conference and set a second status conference for June 7, 2022.  (ECF No. 13.)  On June 7, 2022, the Court held a status conference, and a bench trial was set for August 2, 2022.

On August 2, 2022, the Court held a bench trial.  (ECF No. 17.)  Jason Baskett and Alex Dempsey appeared on behalf of the Government.  Erin Snider appeared on behalf of Defendant, who was also present.  On September 28, 2022, the Court issued its memorandum of decision after court trial ("Memorandum Decision"), finding Defendant guilty of violating 18 U.S.C. § 1382.  (ECF No. 20.)   The Court converted the October 4, 2022, status conference into a sentencing hearing.  (Id.)

On October 1, 2022, the Government filed a sentencing memorandum based partly on Defendant's prior criminal record.  (ECF No. 21.)[1]  On that same date, Defense Counsel emailed counsel for the Government inquiring why the Government never provided a criminal history report as required under Federal Rule of Criminal Procedure 16, but Defense Counsel received no substantive answer prior to the filing of the motion for new trial.  (Mot. 4; Decl. Erin Snyder

---

[1]  As Defendant notes, the Government filed the copy of the criminal record containing Defendant's social-security number, date of birth, and home address, without redactions in violation of Local Rule 140.  The Court additionally highlights this is a clear violation of the Rules of Criminal Procedure.  See Fed. R. Crim. P. 49.1(a) (restricting use of full social-security number, full birthdate, and full home address in filings in criminal actions).  The material remained available to the public until defense counsel contacted the Clerk's Office regarding sealing the filing. Defendant also notes the sentencing memorandum was filed untimely.

1  Supp. Mot. ("Snyder Decl.') ¶ 5, ECF No. 23-1.)

2      At the October 4, 2022 hearing, Defense Counsel requested the Court continue the
3  sentencing hearing to enable Defendant to respond to the late-filed sentencing memorandum, and
4  the Court granted the request, setting the sentencing hearing for November 17, 2022.  (ECF No.
5  22.)  At the October 4, 2022 hearing, the Government requested the Court to read the verdict into
6  the record, citing United States v. Ramirez-Ramirez, 45 F.4th 1103 (9th Cir. 2022) ("Ramirez-
7  Ramirez").  At the October 4, 2022 hearing, the Court reiterated its finding that Defendant was
8  guilty of a violation of 18 U.S.C. § 1382.  (Id.)  The Court also instructed Defendant to notify the
9  Court in writing by October 20, 2022, if Defendant requests a formal reading of the
10  Memorandum Decision.  (Id.)

11      On October 12, 2022, Defendant filed the motion for new trial that is currently before the
12  Court.  (Def.'s Mot. New Trial ("Mot."), ECF No. 23.)  On October 19, 2022, the Government
13  filed an opposition brief.  (Govt. Opp'n Mot. ("Opp'n"), ECF No. 24.)  On October 19, 2022,
14  Defendant filed a statement notifying the Court that Defendant did not take the position that it is
15  necessary or required for the Court to formally read the Memorandum Decision into the record.
16  (ECF No. 25.)  Defendant's notice also specified that such reading of findings of fact is a distinct
17  issue from that raised in the current motion for new trial.  (Id. at 1-2.)

18                                      **III.**

19                              **LEGAL STANDARDS**

20      "Upon a defendant's request, the government must furnish the defendant with a copy of
21  the defendant's prior criminal record that is within the government's possession, custody, or
22  control if the attorney for the government knows--or through due diligence could know--that the
23  record exists."  Fed. R. Crim. P. 16(a)(1)(D); see also L.R. 440(a) ("Upon request of the
24  defendant and unless otherwise ordered by the Court, all discovery required by Fed. R. Crim. P.
25  16(a)(1)(A), (B), (C), (D), (E) and (G) to be provided by the Government shall be provided in the
26  manner set forth in the Rule within fourteen (14) days from the date of arraignment.").

27      Under the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty, or
28  property, without due process of law."  U.S. Const. amend. V  Under the Sixth Amendment to

1   the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to

2   a speedy and public trial." U.S. Const. amend. VI.

3          Under Rule 43 of the Federal Rules of Criminal Procedure, unless Rule 43, "Rule 5, or

4   Rule 10 provides otherwise, the defendant must be present at: . . . every trial stage, including jury

5   impanelment and the return of the verdict." Fed. R. Crim. P. 43(a)(2). "A defendant need not be

6   present under any of the following circumstances: . . . The offense is punishable by fine or by

7   imprisonment for not more than one year, or both, and with the defendant's written consent, the

8   court permits arraignment, plea, trial, and sentencing to occur by video teleconferencing or in the

9   defendant's absence." Fed. R. Crim. P. 43(b)(2). "If the defendant waives the right to be

10  present, the trial may proceed to completion, including the verdict's return and sentencing,

11  during the defendant's absence." Fed. R. Crim. P. 43(c)(2).

12         "In a case tried without a jury, the court must find the defendant guilty or not guilty."

13  Fed. R. Crim. P. 23(c). "If a party requests before the finding of guilty or not guilty, the court

14  must state its specific findings of fact in open court or in a written decision or opinion." Id.

15         "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if

16  the interest of justice so requires." Fed. R. Crim. P. 33(a). "If the case was tried without a jury,

17  the court may take additional testimony and enter a new judgment." Id.

18                                          **IV.**

19                                    **DISCUSSION**

20         Defendant moves for a new trial on two proffered grounds: (A) the Government's failure

21  to provide a copy of Defendant's criminal history record violated Federal Rule of Criminal

22  Procedure 16(a)(1)(D); and (B) the Court violated Defendant's right to a public trial and his right

23  to be present when it issued its written memorandum decision following the bench trial in this

24  matter rather than announcing its verdict and finding in a public setting.

25         **A.      Discovery Relating to Defendant's Criminal History Record**

26         Defendant moves for a new trial arguing the Government has violated Federal Rule of

27  Criminal Procedure 16(a)(1)(D).

28  / / /

1          1.     Defendant's Motion

2          On March 4, 2022, Defendant requested discovery encompassing all discovery to which

3    Defendant was entitled under Rule 16, including any criminal history report under Rule

4    16(a)(1)(D).  Two days later, Defendant proffers the Government seemingly complied with its

5    obligations under Rule 16 when it produced two photographs and promised to investigate the

6    existence of any additional photographs and reports.  (Mot. 5; Snyder Decl. ¶ 4.)  Given the

7    absence of a criminal history report in the government's initial discovery production, Defense

8    Counsel suggests they had no reason to believe that Defendant had a criminal record.  Now, over

9    six months after initial discovery was due, the Government has produced a copy of Defendant's

10   prior criminal record for the first time, which dates back to at least 2011.  (Mot. 5.)

11         Defense Counsel contends that while the report appears to have been generated on

12   September 30, 2022, counsel for the Government would have been aware of Defendant's record

13   in March 2022, when initial discovery was due, had counsel for the Government exercised due

14   diligence.  (Id.)  Defendant suggest that as the Government has access to Defendant's criminal

15   record now, it presumably had access to his record six months ago when the Government was

16   ordered to produce Rule 16 discovery.  Therefore, Defendant argues the Government did not

17   exercise due diligence six months ago, and instead, chose to wait until *after* Defendant exercised

18   his right to go to trial and then blindsided the defense on the eve of the sentencing hearing.

19   Defendant contends the Government's failure to produce the criminal record in a timely fashion

20   deprived Defendant—and, by extension, Defendant's counsel—of information that may have

21   impacted the decision to go to trial, and that the only appropriate remedy for the flagrant

22   violation of the Government's obligations under Rule 16 is a new trial.

23         2.     The Government's Opposition Brief

24         The Government responds that Defendant's criminal history was not in the Government

25   attorney's "possession, custody, or control" at the time discovery was ordered or on the date of

26   Defendant's trial.  (Opp'n 3.)  The Government proffers the "Government attorney does not

27   maintain any database that contains the Defendant's prior record," but that "Edwards Air Force

28   Security Forces, however, can put in requests to a database operated by a private entity,

OpenFox, when it needs individual's criminal background checks." (Id.)  The Government notes that on September 6, 2022, the day of Defendant's trial, the Court made clear to the Government that it would expect criminal histories be provided to defendants upon the order of discovery; that the Government has since done so in every case in which discovery has been ordered; that to do so, the Government has collaborated with Security Forces to make these requests to OpenFox to acquire these criminal histories; and the Government now, as standard operating procedure, goes and obtains these histories.  (Id.)  Nonetheless, the Government does not believe such records must strictly be provided under Rule 16 in every case.  (Id.)

3.    The Court Shall Deny Defendant's Motion for New Trial

First, as noted above, the Government has acknowledged this Court's view of the obligation to provide such criminal records when such records are requested by defendants, and has affirmed that it would obtain and provide such criminal records in every case moving forward before this Court.  The Court finds such practice to be prudent and should be routine given the prosecution power of the federal government, and for the reasons explained below. Nonetheless, the Court acknowledges a lack of clear authority as to this prong of Rule 16, and the extent it expressly requires the Government to obtain such criminal records through some sort of background check, like in this particular case.

In briefing, the Government simply makes no mention of the diligence prong of the Rule which provides that the Government is required to provide such criminal record if it "is within the government's possession, custody, or control if the attorney for the government knows--or through due diligence could know--that the record exists."  Fed. R. Crim. P. 16(a)(1)(D).  The Government should have addressed the due diligence prong of the Rule as while there is merit to its argument that the prosecution team or even the federal government as a whole here did not have a completed copy of the criminal record background check in its actual possession, the Government may be considered to have control or possession and the Government proffered no legal authority or mention of the due diligence prong for the Court to ground its analysis on. Nonetheless, Defendant has also provided no clear authority regarding this issue, and the Court has only located limited guidance, that the Court now turns to.

1    The Court starts with the meaning of "government" in the Rule.  The Ninth Circuit has

2  stated, speaking to a different version of the prior criminal record prong of Rule 16: "

3  'Government' as used in this rule refers to the office of the prosecutor and related executive

4  agencies, and does not refer to offices of the court, such as the Clerk's Office or the Probation

5  Office."   United States v. Trejo-Zambrano, 582 F.2d 460, 465 (9th Cir. 1978) ("The

6  legislative history of Rule 16(a)(1)(B) . . . confirms the Fifth Circuit's interpretation of the term

7  'government.' ").  The Ninth Circuit continued by noting "the prosecutor ordinarily discharges

8  his duty under Rule 16(a) (1)(B) by supplying the accused with a copy of his F.B.I. rap sheet."

9  Id.  As the legislative history explains:

10              The Committee added language to subdivision (a)(1)(B) to
               conform it to provisions in subdivision (a)(1)(A). The rule as
11             changed by the Committee requires the prosecutor to give the
               defendant such copy of the defendant's prior criminal record as is
12             within the prosecutor's "possession, custody, or control, the
               existence of which is known, or by the exercise of due diligence
13             may become known" to the prosecutor. The Committee also made
               a similar conforming change in subdivision (a)(1)(E), dealing with
14             the criminal records of government witnesses. The prosecutor can
               ordinarily discharge his obligation under these two subdivisions.
15             (a)(1)(B) and (E), by obtaining a copy of the F.B.I. "rap sheet."

16  Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment.  The history also explains

17  part of the reasoning behind the subdivision: "A defendant may be uncertain of the precise nature

18  of his prior record and it seems therefore in the interest of efficient and fair administration to

19  make it possible to resolve prior to trial any disputes as to the correctness of the relevant criminal

20  record of the defendant."  Id.

21    Thus, the limited baseline guidance from the legislative history indicates that the general

22  duty of a federal prosecutor can be satisfied by providing an F.B.I. "rap sheet."  It is unclear to

23  the Court whether this should be extended to mean a federal prosecutor should run some sort of

24  background check in every single case where a Rule 16 discovery request is made (whether

25  through a private entity as the Government suggests is the available process in this particular

26  office), that ultimately results in a background check that is assigned an F.B.I. identification

27  number and ran through systems and records maintained by the federal government.

28    Perhaps the deepest exploration by the Ninth Circuit of the foundational issues

underlying the "due diligence" prong in relation to the "government" is in United States v. Gatto,
763 F.2d 1040, 1047–49 (9th Cir. 1985), wherein the court discussed a provision that did not
include the "due diligence" prong as applied to evidence located in a search of trash:

> The record shows that neither the Sacramento-based officials nor
> the Salt Lake City FBI agent actually possessed, had custody of, or
> controlled the trash search evidence before March 27, 1984.
> Moreover, the district judge never made any finding to the
> contrary. Thus, the precise issue we face is whether rule
> 16(a)(1)(C) ever requires the federal government to disclose and
> produce documents that are in the actual possession, custody or
> control of state officials, the relevance of which the federal
> government negligently or recklessly fails to appreciate. This is a
> legal question, reviewable de novo. *McConney,* 728 F.2d at 1201.
>
> Our first question is whether, pursuant to rule 16(a)(1)(C), the
> "government" includes any persons other than the prosecutors. We
> have not faced this question before. The district court appears to
> have taken the position that the "government" included the
> Sacramento-based FBI agents assisting the federal prosecutor in
> this case as well as the FBI agent in Salt Lake City who was
> coordinating information.
>
> In *United States v. Trevino,* 556 F.2d 1265, 1271–72 (5th
> Cir.1977), the court addressed the question of whether a
> presentence report in the possession of the probation department
> was in the possession of the "government" for purposes of rule
> 16(a)(1)(C). While holding that it was not, that court concluded the
> "government" meant the prosecution, which is "in the business of
> introducing evidence in chief at trial." *Id.* at 1271. In dictum, the
> court included in that term the prosecutor and closely connected
> investigative agencies. *Id.* at 1272. We need not resolve whether
> the district court correctly included the identified FBI agents for
> purposes of rule 16(a)(1)(C). Even if we assume the district judge
> was correct, the critical issue pertains to possession of the records.
>
> The important question, therefore, is whether the documents must
> be in the actual possession or control of the FBI agents or whether
> constructive possession or control is sufficient. Under rule
> 16(a)(1)(A), which deals with statements of a defendant, we have
> recognized that the prosecutor's actual possession is not necessary
> in all cases. For example, in *United States v. Bailleaux,* 685 F.2d
> 1105, 1113–14 (9th Cir.1982), we held that the rule imposed a duty
> on the prosecutor to produce copies of a defendant's statements
> that he did not actually possess if the FBI possessed them and the
> prosecutor could have learned about them by exercising due
> diligence. Similarly, in *United States v. Gillings,* 568 F.2d 1307,
> 1310 (9th Cir.) (per curiam), *cert. denied,* 436 U.S. 919, 98 S.Ct.
> 2267, 56 L.Ed.2d 760 (1978), we held that a prosecutor breached
> his duty to produce more timely a tape containing the defendant's
> statements that he should have obtained earlier from the Internal
> Revenue Service.

The cases discussing a prosecutor's due diligence obligation under rule 16(a)(1)(A) are not relevant to our case under rule 16(a)(1)(C). We have already assumed for purposes of this appeal that the government included the designated FBI agents. Rule 16(a)(1)(A) only requires the government to disclose any of the defendant's statements that are "within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." **Thus, the due diligence requirement establishing constructive possession relates solely to the prosecutor and whether he should have been aware of a statement in the possession of another *federal* agency.** As no such language is found in rule 16(a)(1)(C), a literal reading of the entire rule requires us to conclude that Congress intended no such constructive possession extension. **Moreover, even if such language were found in rule 16(a)(1)(C), it would only create a due diligence requirement over documents in the possession, custody, or control of some federal agency. We would still be required to find some special reason to justify extending the requirement to documents in the possession, custody, or control of state authorities.**

Because we find no due diligence language in rule 16(a)(1)(C) at all, nor any special reason to deviate from its plain language, we conclude that it triggers the government's disclosure obligation only with respect to documents within the federal government's actual possession, custody, or control. This interpretation is consistent with the only case of ours addressing this problem.

Gatto, 763 F.2d at 1047–49 (emphasis added).

In line with the holding of Gatto, more recently the Ninth Circuit has affirmed that in the context of statements made to local law enforcement, there is only a duty to disclose by the federal prosecutors if they are in actual possession, and there is not a duty to perform a due diligence check with the local law enforcement for such records.  United States v. Fort, 472 F.3d 1106, 1111–12 (9th Cir. 2007) ("Rule 16(a)(1)(A) has been read to require federal prosecutors to disclose statements made by defendants to *local* law enforcement officers so long as such statements are in the federal prosecutor's possession at the time of trial.").  Rule 16(a)(1)(A) does not contain the due diligence prong, as the provision at issue here does.

Given the language of the Rule, the legislative history, the limited caselaw discussing the due diligence prong (or lack thereof), the Court's experience, and the custom and practice related to the type of discovery expressly sought by Defendant from prosecutors in relation to the power of the federal prosecution apparatus, the Court finds the Government violated its discovery

1    obligations when it failed to conduct a criminal record background check when the discovery

2    was sought, and failed to produce the criminal records that it could have provided within

3    fourteen days.  See Gatto, 763 F.2d at 1047–49; Fed. R. Crim. P. 16 advisory committee's note

4    to 1974 amendment; United States v. Anh The Duong, No. CR 01-20154 JF PVT, 2010 WL

5    532513, at *4 (N.D. Cal. Feb. 9, 2010) (granting request pursuant to Rule 16(a)(1)(D) where

6    defendant requested the "prior criminal record including any entry the attorney for the

7    government knows-or through due diligence could know-exist . . . [with such records to include]

8    but not be limited to, any record kept by any state, federal, or local government agency, of any

9    detention or official inquiry even if not leading to arrest and even if not reported to any federal,

10   state, or county central record keeping agency.").  If there was to be a delay beyond the fourteen

11   day period, prudence would have dictated that the Government should have at least informed

12   defense counsel that such criminal record check was not performed, or that it would be

13   forthcoming at a later date, if that was the Government's intention.

14       As to the federal prosecution apparatus, while the Government maintains it had to obtain

15   possession of the criminal record from a private entity that runs background checks for the

16   specific prosecution office operating at the military base here, the Court does not find the

17   Government's arguments persuasive.  The Court finds it inappropriate for the Government to

18   essentially sidestep or delay providing criminal records to defendants in criminal actions, where

19   such defendants expressly request criminal records pursuant to Rule 16, and the Government

20   indeed does obtain the criminal record, just at a later point in the criminal action.  In other words,

21   is the record (or potential confirmation of an absence of a criminal record), not in some sort of

22   delayed constructive possession or control of the Government?  See Fed. R. Crim. P. 16 advisory

23   committee's note to 1974 amendment ("The prosecutor can ordinarily discharge his obligation . .

24   . by obtaining a copy of the F.B.I. "rap sheet").

25       The delay of producing such record, that will certainly be obtained at some point in the

26   criminal action, goes against one of the primary policy goals underlying the Rule.  See id. ("A

27   defendant may be uncertain of the precise nature of his prior record and it seems therefore in the

28   interest of efficient and fair administration to make it possible to resolve prior to trial any

1  disputes as to the correctness of the relevant criminal record of the defendant.").  In that regard,

2  the absence of a criminal record within a production that contains other types of discovery that

3  were requested concurrently with the criminal record may lead defense counsel to infer there is

4  not a criminal record.  See United States v. Howell, 231 F.3d 615, 625 (9th Cir. 2000)

5  ("[C]ounsel is entitled to plan his trial strategy on the basis of full disclosure by the government

6  regardless of the defendant's knowledge or memory of the disclosed statements." (quoting

7  United States v. McElroy, 697 F.2d 459, 465 (2d Cir.1982))).  Nonetheless, while an absence in

8  production may lead a defense *counsel* to an inference of a defendant having no criminal record,

9  it does not lead a *defendant* to a similar conclusion, just that the Government may not have found

10 the record.  While a goal underlying the Rule is to resolve potential disputes concerning details

11 contained in a record, except in extreme cases, it is not likely an actual defendant has *no*

12 knowledge of any past criminal records.  However, this latter aspect goes to the harmless nature

13 of the violation, not the violation *per se*.

14      Accordingly, for the above reasons, the Court finds the Government violated its

15 obligation under Rule 16 to provide a criminal record.  The Court now turns to determine if a

16 new trial is warranted.  For the below reasons, even if the Court is incorrect in its interpretation

17 of the Rule, the Court finds any violation here to be harmless, and does not warrant granting

18 Defendant's requested relief of a new trial.

19      Generally for Rule 16 discovery violations where a defendant moves for a new trial, "the

20 harmless error rule applies."  See United States v. Alvarez, 358 F.3d 1194, 1210 (9th Cir. 2004)

21 ("We review discovery questions, including alleged *Brady* and Jencks Act rulings, for abuse of

22 discretion . . . Alvarez must show not only that the district court abused its discretion, but also

23 that the abuse resulted in prejudice to his 'substantial rights[,]' [and under the harmless error

24 rule,] [i]f Alvarez does not establish that production of agents' notes, or timely production of

25 other discovery, would have been likely to affect the outcome of the trial, any error is

26 harmless.");  United States v. Doe, 705 F.3d 1134, 1151–52 (9th Cir. 2013) ("[I]f the district

27 court determines . . . the failure to disclose them was harmless, the district court shall reinstate

28 Doe's conviction.");  United States v. Ornelas, 853 F. App'x 80, 88 (9th Cir. 2021) (same).  Thus,

where records mandated under Rule 16 are not disclosed, the district court is to consider "whether the Government's documents in fact contain, or would have led to, information that might have altered the verdict." Doe, 705 F.3d 1134, 1152 (9th Cir. 2013) (quoting United States v. Stever, 603 F.3d 747, 754 (9th Cir. 2010)). "If the district court determines that the documents sought . . . exist and contain 'probative, relevant, and material information' that 'probably would have changed the outcome' of the trial, the district court must grant [defendant] a new trial." Doe, 705 F.3d at 1152 (citing Alvarez, 358 F.3d at 1209).[2]

Here, the parties have not provided any caselaw that has addressed this issue of whether the failure by the prosecution to provide a defendant's prior criminal history may have impacted a defendant's decision to go to trial, and whether such non-disclosure may require a new trial. The Court has not located clear persuasive or controlling authority on the issue, however, in somewhat analogous situations, courts find that the Defendant's presumed knowledge of their own criminal history would preclude the need for a new trial.

In the Brady context, it does not appear information within the knowledge of the Defendant is subject to the rule, as "if 'the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence,' the government's failure to bring the evidence to the direct attention of the defense does not constitute 'suppression.' " Cunningham v. Wong, 704 F.3d 1143, 1154 (9th Cir. 2013) (quoting Raley v. Ylst, 470 F.3d 792, 804 (9th Cir.2006)); Id. at 1154 ("Applying Raley, Cunningham's attorneys possessed the 'salient facts' that would have allowed them to access Cebreros's medical records [as] [t]hey knew he had been shot and was treated by medical personnel following the shooting [and] [thus] [t]here was no suppression of this easily attainable evidence."); United States v. Christensen, 624 F. App'x 466, 481–82 (9th

---

[2] The Court notes that Rule 16 itself provides remedies the Court may employ for violations, including: "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). The Court also notes the Local Rules additional provide a continuing duty of disclosure. L.R. 440(d) ("The duty of the Government and the defendant to provide discovery under this Rule is a continuing one. Upon failure to provide discovery and inspection as required by this Rule, the Government or the defendant or counsel may be subject to sanctions as set forth in L.R. 110."). The Court already granted a continuance to allow Defendant to respond to the late-filed sentencing memorandum. (ECF No. 22.) Defendant does not request another form of relief in the current motion aside from a new trial, and that is what the Court's analysis here focuses on, leading to the conclusion that a new trial is not warranted.

Cir. 2015) ("Ultimately it found the prosecutor had 'no actual knowledge that the Government was in possession of a compelled statement,' and further that 'nothing in the statement itself was used' in cross examination [as] [r]ather, the prosecution deduced the contents of the IAD recordings from the very existence of the investigation and Arneson's own testimony . . . [and] [f]urthermore, any Rule 16 violation was harmless because the IAD investigation was common knowledge."); Bonnaudet v. Henry, 303 F. App'x 375, 376 (9th Cir. 2008) ("[P]etitioner's Brady claim fails because she supposedly took the van to the body shop herself and knew its condition [and] was therefore 'aware of the essential facts enabling [her] to take advantage of [the] exculpatory evidence.' " (quoting Raley, 470 F.3d at 804)).

However, in Howell, the Ninth Circuit found a violation of Brady where the prosecution failed to notify defense counsel of errors contained in police reports, as counsel is entitled to plan trial strategy based on complete disclosure by the Government:

> The government admits that it learned of the mistake in the police reports before trial and did not reveal the error to the defense. Nevertheless, the government argues that Howell is not entitled to a mistrial for three reasons: (1) because Howell knew that the money was actually recovered from him, the government was under no obligation to disclose the information to the defense; (2) the correct information was inculpatory in that it suggested that Howell committed the offense, and therefore the government was under no duty to disclose the information to the defense; and (3) even if the mistakes in the reports should have been disclosed, Howell was not sufficiently prejudiced to warrant a mistrial. We conclude that the government's first two arguments are baseless, but that the third has merit, and therefore will not disturb his conviction.
>
> The government's contention that it had no duty to disclose the mistake to the defense because Howell knew the truth and could have informed his counsel is wrong. The availability of particular statements through the defendant himself does not negate the government's duty to disclose. See United States v. McElroy, 697 F.2d 459, 465 (2d Cir.1982). Defendants often mistrust their counsel, and even defendants who cooperate with counsel cannot always remember all of the relevant facts or realize the legal importance of certain occurrences. See id. Consequently, "[d]efense counsel is entitled to plan his trial strategy on the basis of full disclosure by the government regardless of the defendant's knowledge or memory of the disclosed statements." Id.

Howell, 231 F.3d at 624–25; but see Tennison v. City & Cnty. of San Francisco, 570 F.3d 1078, 1091 (9th Cir. 2009) (noting Howell and stating "[a] defendant's awareness of his own medical

1   history, however, is not analogous to Plaintiffs' awareness that [a witness] might have

2   information helpful to their case.").  This policy underpinning is similar to that expressed in the

3   legislative history of Rule 16.  See Fed. R. Crim. P. 16 advisory committee's note to 1974

4   amendment ("A defendant may be uncertain of the precise nature of his prior record and it seems

5   therefore in the interest of efficient and fair administration to make it possible to resolve prior to

6   trial any disputes as to the correctness of the relevant criminal record of the defendant.").

7   Therefore, the Court acknowledges that the lack of a record provided by the prosecution could

8   lead Defense Counsel to assume there is no criminal history.  Here, Defendant's motion does not

9   proffer any contention that Defendant did not know or was unaware of his own criminal history,

10   or that counsel was not able to ask Defendant regarding the criminal history prior to trial.[3]  It is

11   not clear whether a lack of inquiry or discussion could perhaps state a claim for ineffective

12   assistance of counsel.  The Court notes that at least one court of appeal has found a defendant's

13   own knowledge of his own criminal record precluded a claim for ineffective assistance of

14   counsel.  See Pericles v. United States, 567 F. App'x 776, 781–82 (11th Cir. 2014) ("Pericles

15   does not even allege that he did not know his own criminal history.  Had Pericles wished for his

16   attorney to evaluate what effect his convictions might have on any sentence he would receive, he

17   could have simply told his attorney about his personal criminal history.  He did not need for his

18   attorney to go searching for information that he himself possessed.").[4]

19

---

20   [3]  The Court is not privy to such information and counsel is under no obligation to disclose such communications.

21   [4]  In Pericles, the 11th Circuit also found no prejudice  as defendant did not establish a reasonable probability that but
     for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial:

22
23           Alternatively, Pericles cannot show prejudice on this claim. To establish prejudice based on
             ineffective assistance in deciding whether to plead guilty or go to trial, a defendant " 'must show
24           that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty
             and would [not] have insisted on going to trial.' " Coulter v. Herring, 60 F.3d 1499, 1504 (11th
             Cir.1995) (alterations in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370,
25           88 L.Ed.2d 203 (1985)). A defendant's "after the fact testimony concerning his desire to plead,
             without more, is insufficient to establish" prejudice. Diaz v. United States, 930 F.2d 832, 835
26           (11th Cir.1991).

27           Even assuming his attorney did not review his criminal history, and this constituted unreasonable
             performance, Pericles has not shown prejudice. As the magistrate judge noted, "Pericles has
28           maintained his innocence throughout the underlying criminal proceedings" and "even submitted to
             a polygraph examination after trial to show he was innocent." In light of Pericles's insistence that

The Court finds the circumstances in <u>Howell</u> to be more akin to an omission of particular knowledge of incorrect records that were produced in discovery, and a more analogous failure here would have been an incorrect criminal record going to counsel along with knowledge of such error on the part of the prosecution, leading counsel to rely on such incorrect proffer, and equating to the Government willfully engaging in non-disclosure.  In either regard and more importantly, the Court already found the Government did violate its obligation under Rule 16, but like <u>Howell</u>, the Court also finds Defendant here was not sufficiently prejudiced to warrant a new trial.

Despite <u>Howell</u>, the Court concludes Defendant knew or should have known his criminal record, or counsel could have inquired of or obtained such information.[5]  See <u>United States v. Marashi</u>, 913 F.2d 724, 733 (9th Cir. 1990) ("Marashi knew well before trial that Danzig had hired several private detectives to spy on his unfaithful wife and Marashi in connection with his divorce proceedings [and] offers no reason why he could not have subpoenaed Danzig to learn more about the detectives."); <u>Cannon v. Polk Cnty./Polk Cnty. Sheriff</u>, 68 F. Supp. 3d 1267, 1287 (D. Or. 2014) ("[A] *Brady* violation does not exist in a case in which the allegedly suppressed evidence is known by the defense . . . [and] [i]t is apparent that plaintiff knew what he said during the interrogation."), <u>aff'd sub nom.</u> <u>Cannon v. Polk Cnty.</u>, 702 F. App'x 527 (9th Cir. 2017); <u>United States v. Torres</u>, 129 F.3d 710, 717 (2d Cir. 1997) ("It is well settled that evidence 'is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence.' " (quoting <u>United States v. Gonzalez</u>, 110 F.3d 936,

---

he is innocent of the offense, there is no reasonable probability that he would have pled guilty if, before Pericles pled, his attorney had reviewed his criminal history. *See Osley v. United States,* 751 F.3d 1214, 1224 (11th Cir.2014) (defendant claiming ineffective assistance of counsel based on attorney's failure to advise him that he faced a mandatory minimum sentence could not show prejudice in part because his "claim that he would have pled guilty had he been properly informed [was] ... undermined by his repeated claims of innocence").

<u>Pericles</u>, 567 F. App'x at 781–82.

[5]  Defense Counsel does not proffer that communications occurred with the Government by which counsel attempted to confirm there was no criminal record in existence pertaining to Defendant, despite only very limited discovery being provided and no criminal record provided.

944 (2d Cir. 1997))); <u>United States v. Vanier</u>, No. S1 18-CR-873 (VSB), 2021 WL 5989773, at *9 (S.D.N.Y. Dec. 17, 2021) ("Moreover, Vanier knew when he was incarcerated and when he attended the residential treatment program because he lived those events, as such they do not qualify as <u>Brady</u> information.").

Importantly, the information was not used in the trial, nor does Defendant proffer he would have used it, and therefore the Court finds Defendant has not shown that the discovery would have been likely to affect the outcome of the trial. See <u>Alvarez</u>, 358 F.3d at 1210; <u>Doe</u>, 705 F.3d at 1151–52. Even if the criminal history was provided, the Court would not have been aware of it, and thus the absence or non-absence of the criminal record played no role in the Court's decision prior to sentencing. Additionally, as for the Defendant's decision *to go to trial* rather than plead guilty, the Court does not find it was so impacted by the failure to provide the criminal record that it warrants a new trial, as in addition to the Court finding Defendant had or should have had knowledge of his criminal record, if Defendant did plead guilty, the Court would not be bound by the recommendation of the prosecution, and the Court would still perform its own independent analysis to determine an appropriate sentence, and would factor the criminal record in such determination. While the Court acknowledges a common perception that pleading guilty results in less harsh sentences, the Court is not bound by the recommendation and therefore this additionally counsels against granting Defendant a new trial.

Accordingly, for all of the above reasons, Defendant's motion for a new trial shall be denied.

**B.     Defendant's Motion for New Trial for Failure to Announce Guilty Verdict**

Defendant moves for a new trial on the proffered basis the Court violated Defendant's right to a public trial and his right to be present when it issued its written memorandum decision following the bench trial in this matter rather than announcing its verdict and finding in a public setting. See <u>Ramirez-Ramirez</u>, 45 F.4th 1103.[6]

/ / /

---

[6] The Ninth Circuit issued its decision in <u>Ramirez-Ramirez</u> on August 22, 2022, after the bench trial in this matter that was held on August 2, 2022, and before the Court's memorandum decision issued on September 28, 2022.

1      1.      The Defendant's Motion

2      Defendant contends the Court indisputably violated his right to a public trial and right to

3 be present when, nearly two months after the bench trial, the Court issued its Memorandum

4 Decision "behind closed doors, shielded from the public and Mr. Wright."  Defendant argues this

5 undermined Defendant's opportunity to fully defend against the charge, deprived the public of

6 the opportunity to monitor the proceedings for fairness, and diminished the gravity of the Court's

7 guilty verdict.  Defendant notes that although the Ramirez-Ramirez Court found a new trial was

8 not an appropriate remedy in that case, a new trial is the appropriate remedy here, as unlike in

9 Ramirez-Ramirez, Defendant is raising these issues before this Court rather than on appeal,

10 enabling this Court to promptly address the violations by way of new trial while witness

11 recollections remain fresh.  Defendant further argues that there is no other remedy this Court can

12 offer Defendant short of a new trial, and given the importance of the right to a public trial and the

13 right to be present when the verdict is rendered, the violation of those rights cannot stand without

14 irreparably harming the fairness, integrity, and legitimacy of the judicial proceedings.

15      2.      The Government's Opposition Brief

16      The Government responds that it was aware of the concerns raised by the recent ruling in

17 Ramirez-Ramirez; that in Court on October 4, 2022, all parties understood that this requirement

18 was in place in light of the recent decision, but the requirements of which were still not fully

19 understood; that the Government offered that the Court read the verdict out in public at this first

20 possible opportunity; that the Court similarly offered to do so; that the Court also offered to read

21 part of the Memorandum Decision or to read an abbreviated version; and at that time the Defense

22 would not state whether any of the Court's offers were enough to satisfy Ramirez-Ramirez's

23 requirement.[7]

24      As of the filing of the opposition, the Government contends: Ramirez-Ramirez has not

25 been violated; that it is not clear how or when a verdict must be read in public for Ramirez-

26 Ramirez to be satisfied; and emphasizes that the trial itself was public, and sentencing has not

27 _____

28 [7]  The Court notes the Government's opposition brief was field before Defendant filed his notice regarding such offers, which the Court summarizes in the next subsection.

started.  The Government argues there is nothing to indicate that reading the verdict at an upcoming hearing would not satisfy <u>Ramirez-Ramirez</u>, and furthermore, even if the requirements of <u>Ramirez-Ramirez</u> have not been met, the only appropriate relief would be to read the verdict into the public record during the next public court appearance as this would preserve the Defendant's right to a public trial and remedy any of the concerns raised in <u>Ramirez-Ramirez</u>.

   3. <u>Defendant's Notice Regarding Reading of Memorandum Decision</u>

  Before the motion for a new trial was filed, the Court read the verdict at the October 4, 2022 status conference, and further ordered Defendant to advise the Court in writing if he requested a formal reading of the Memorandum Decision.  On October 19, 2022, Defendant filed a notice in response to the Court's request.  (ECF No. 25.)

  Defendant's filing first proffers that as Federal Rule of Criminal Procedure 23(c) provides that, in a nonjury trial, a court may "state its specific findings of fact in open court or in a written decision or opinion," the Defendant does not believe it is necessary or required for the Court to formally read into the record the fifteen-page Memorandum Decision.  The Defendant's filing indicates, however, that such issue—that is, whether the Court must formally read into the record its specific findings of fact—is distinct from the issue raised in Defendant's motion for new trial—that is, whether the Court violated Defendant's right to a public trial and his right to be present when it announced its guilty verdict in a written filing rather than in open court with both Defendant and the public present.  (ECF No. 25 at 1-2.)

   4. <u>The Court's Ruling</u>

  In <u>Ramirez-Ramirez</u>, the Ninth Circuit held the district court erred when it issued a written order finding a defendant guilty following a bench trial rather than announcing the defendant guilty in a public proceeding as required under the Sixth Amendment's guarantee of a public trial.  45 F.4th at 1110-1112.

  Ramirez-Ramirez first argued the issuance of the written finding violated his right to be present in violation of the Fifth Amendment, Sixth Amendment, and Federal Rule of Criminal Procedure 43(a).  45 F.4th at 1109.  The Ninth Circuit found Ramirez-Ramirez had a strong argument his right to be present was violated.  <u>Id.</u> ("A defendant's presence at the moment the

1  verdict is announced can exert a powerful influence on the proceedings and the decisionmaker.")

2  However, the Ninth Circuit then noted a violation of such right is not a structural error in the

3  Ninth Circuit, and concluded that Ramirez-Ramirez had not shown prejudice.  Id. at 1110

4  ("There is no evidence here that Nuñez's absence had any impact on the district court's

5  determination of his guilt.  Nuñez does not argue that that there would have been any difference

6  in the court's finding of guilt had he been present when it was made, nor is there any evidence in

7  the record to support such a conclusion.  Therefore, even if the district court violated Nuñez's

8  right to be present, it was not plain error.").[8]

9      The Ninth Circuit then considered whether the right to a public trial under the Sixth

10

11  [8]  Defendant correctly notes in briefing that "because the defendant did not raise the argument in the district court, the Court held that the defendant was required to demonstrate his substantial rights were affected by the violation."

12  (Mot. 6.)  The Ninth Circuit stated as to such legal standards:

13      Because Nuñez failed to object and preserve the arguments he now advances, plain error review applies.

14      "A trial court commits plain error when (1) there is error, (2) that is plain [i.e., clear and obvious],

15      and (3) the error affects substantial rights [i.e., affects the outcome of the proceedings]." United States v. Shields, 844 F.3d 819, 823 (9th Cir. 2016) (internal quotation marks and citation omitted;

16      additions in original). If those conditions are met, we have "discretion to notice such error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial

17      proceedings." Id. (internal quotation marks and citation omitted). The defendant bears the burden of proving that there was clear error. See United States v. Vonn, 535 U.S. 55, 59, 122 S.Ct. 1043,

18      152 L.Ed.2d 90 (2002).

19      Constitutional errors can be divided into two categories: trial errors and structural errors. United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Trial errors

20      are discrete mistakes that "occu[r] during the presentation of the case to the jury." Arizona v. Fulminante, 499 U.S. 279, 307, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). They are subject to

21      harmless error review. Id. at 308, 111 S.Ct. 1246. Structural errors, on the other hand, "defy analysis by harmless-error standards" because they affect "the framework within which the trial

22      proceeds" rather than "the trial process itself." Id. at 309–10, 111 S.Ct. 1246 (internal quotation marks omitted). Because structural errors necessarily "affect[ ] substantive rights" and

23      "undermine[ ] the fairness of a criminal proceeding as a whole," United States v. Chavez-Cuevas,

24      862 F.3d 729, 734 (9th Cir. 2017) (internal quotation marks and citation omitted), they satisfy the third and fourth prongs of plain error review, see United States v. Becerra, 939 F.3d 995, 1005–06 (9th Cir. 2019).

25  Ramirez-Ramirez, 45 F.4th at 1109.  Applying the standards, the Ninth Circuit found: "Our circuit has held,

26  however, that violation of the right to be present is not a structural error . . . Therefore, to prevail on his claim, Nuñez must establish that the error caused him prejudice . . . Even assuming Nuñez could show that the district court

27  plainly erred, he has not satisfied his burden of proving that his substantial rights were affected by the violation [as] [t]o establish prejudice under the plain-error test, Nuñez must show that the probability of a different result is

28  sufficient to undermine confidence in the outcome of the proceeding."  Id. at 1110 (internal citations and quotation marks omitted).

Amendment was violated.  Id. ("Unlike violation of the right to be present, violation of the public trial right is a structural error[;] . . . [t]he third and fourth prongs of plain error review are therefore satisfied . . . and the only question for us to resolve is whether the district court plainly erred.")  The Ninth Circuit found the district court plainly erred:

> It was a clear violation of Nuñez's Sixth Amendment public trial right for the district court to make only a written finding of guilt rather than announcing its finding in a public proceeding. The public trial right is well-established, *see Waller v. Georgia*, 467 U.S. 39, 44–47, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), as is the fact that it extends to the announcement of the verdict, *see United States v. Akers*, 542 F.2d 770, 772 (9th Cir. 1976) (per curiam). Although we have previously discussed this right only in the context of jury verdicts, *see Akers*, 542 F.2d at 772, the announcement of a finding of guilt in a bench trial is clearly an analogous situation in which the right serves the same purpose and implicates the same values, *see Herring v. New York*, 422 U.S. 853, 858–59, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Indeed, we have never suggested that the right would not apply with equal force to bench trials, and other circuits have affirmed that it does. *See, e.g., United States v. Canady*, 126 F.3d 352, 362 (2d Cir. 1997). Failing to announce the finding of guilt in a public setting was contrary to settled law and thus plainly erroneous. *See Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).
>
> The fact that the district court did not convene an in-person proceeding at all does not change this analysis. Failure to hold proceedings is an "affirmative act by the trial court meant to exclude persons from the courtroom," and it is thus a form of closure. *United States v. Shryock*, 342 F.3d 948, 974 (9th Cir. 2003) (citation omitted). The only difference from the type of closure we normally encounter is that failure to convene a proceeding excludes *all* persons, including the parties themselves. This is as much a violation of the public trial right as barring observers from watching a proceeding. As the Second Circuit has held, "a trial court may not circumvent the public trial right by holding no proceedings at all." *Canady*, 126 F.3d at 363.

Ramirez-Ramirez, 45 F.4th at 1110–11.  The Ninth Circuit explained the reasoning behind the requirement of announcing the verdict in open court with the defendant and public present, and explained why a written finding available on the docket was not sufficient to satisfy the right to a public trial:

> Nor is the fact that the court's written finding was available on the docket sufficient to satisfy the right to a public trial. We recently explained that "[b]ecause of the importance of public observation of court proceedings, transcripts of a trial are not an adequate

substitute for access to the courtroom to observe the trial." *United States v. Allen*, 34 F.4th 789, 796 (9th Cir. 2022); *see also Waller*, 467 U.S. at 43, 104 S.Ct. 2210 (holding that a defendant's public trial right was violated even though the district court released a transcript of the closed proceedings to the public). Public access to a written document does not protect the values that the right to a public trial was designed to advance. Even if members of the public can access a record of the proceedings, they have lost the ability to contemporaneously monitor proceedings to ensure that the defendant is "fairly dealt with." *Waller*, 467 U.S. at 46, 104 S.Ct. 2210 (citation omitted). They have also lost the "presence of interested spectators [who] may keep [the judge and jury] keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* (citation omitted). There are a "host of factors" at play in a trial that are "impossible to capture fully in the record," and a written document is therefore not an adequate substitute for concurrent public access to court proceedings. *Skilling v. United States*, 561 U.S. 358, 386, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010).

Ramirez-Ramirez, 45 F.4th t 1111. The Ninth Circuit noted that an action that violates the right to a public trial may nevertheless fail to implicate the Constitutional guarantee if it is too trivial, however, found the "district court's closure here was certainly not trivial." Id. The court noted that [w]hile neither perjury nor witness testimony are relevant considerations by the time a verdict is rendered, public and accessible verdicts are vital to ensuring fair proceedings and reminding decisionmakers about the gravity of their responsibilities." Id. ("The presence of both the defendant and public witnesses emphasize the human impact of the verdict, and, as we previously discussed, may exert a powerful 'psychological influence' on the decisionmakers." (quoting Larson v. Tansy, 911 F.2d 392, 396 (10th Cir. 1990))); see also 45 F.4th at 1111 ("[T]he failure to announce in open court the verdict strikes at the fundamental values of our judicial system and our society as a whole." (quoting United States v. Canady, 126 F.3d 352, 359 (2d Cir. 1997))).

The Ninth Circuit found that the circumstances of the closure mitigated some harm, as a majority of the trial was public and the district court reiterated its guilty finding at public sentencing, however, ultimately determined that "[g]iven the vital importance of ensuring a verdict is fairly and openly rendered and the fact that seventy-seven days passed before the district court made its public finding of guilt, however, we cannot find that this closure was trivial [and] [t]he district court's actions were sufficient to violate Nuñez's right to a public trial."

1   Ramirez-Ramirez, 45 F.4th at 1111–12.

2          Having discussed the principal case relied on by Defendant, the Court now turns to the

3   facts at hand.  First, while there was consent to proceed by video in this case, the Court finds no

4   waiver in the record by Defendant that would extend to the return of the verdict.  Fed. R. Crim.

5   P. 43(b)(2) (defendant need be present where "offense is punishable by fine or by imprisonment

6   for not more than one year, or both, and with the defendant's written consent, the court permits

7   arraignment, plea, trial, and sentencing to occur by video teleconferencing or in the defendant's

8   absence."); Fed. R. Crim. P. 43(c)(2) ("If the defendant waives the right to be present, the trial

9   may proceed to completion, including the verdict's return and sentencing, during the defendant's

10  absence."); Canady, 126 F.3d at 359 ("In examining a purported waiver of the right to a public

11  trial, we draw all reasonable presumptions against the loss of such a right [and] [i]t must appear

12  clear from the record that the defendant voluntarily and knowingly waived his right to be

13  present.") (citations omitted).

14         The Court concludes Defendant has demonstrated a violation of the right to be present in

15  violation of the Fifth Amendment, Sixth Amendment, and Federal Rule of Criminal Procedure

16  43(a); and violation of the right to a public trial under the Sixth Amendment.  Ramirez-Ramirez,

17  45 F.4th at 1109-11; Fed. R. Crim. P. 43(a)(2) ("Unless this rule, Rule 5, or Rule 10 provides

18  otherwise, the defendant must be present at: . . . every trial stage, including . . . the return of the

19  verdict."); Lewis v. United States, 146 U.S. 370, 372, 13 S. Ct. 136, 137, 36 L. Ed. 1011 (1892)

20  ("A leading principle that pervades the entire law of criminal procedure is that, after indictment

21  found, nothing shall be done in the absence of the prisoner[,] [w]hile this rule has at times, and in

22  the cases of misdemeanors, been somewhat relaxed."); Canady, 126 F.3d at 360 ("The right

23  extends to all stages of trial . . . including the return of the verdict . . . to the extent that a fair and

24  just hearing would be thwarted by [the defendant's] absence." (internal citations and quotation

25  marks omitted)[9]; Rogers v. United States, 422 U.S. 35, 39, 95 S. Ct. 2091, 2095, 45 L. Ed. 2d 1

26  ---

[9]  Defendant does not mention the Due Process Clause in the motion for new trial.  The Court notes that the right to

27  presence also has some protections grounded in the Due Process Clause.  See United States v. Gagnon, 470 U.S.
    522, 526–27, 105 S. Ct. 1482, 1484, 84 L. Ed. 2d 486 (1985) ("The constitutional right to presence is rooted to a
    large extent in the Confrontation Clause of the Sixth Amendment . . . but we have recognized that this right is

28  protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or

1 (1975) (noting Rule 43 guarantees the right to be present at every stage of the trial including

2 return of the verdict)

3     In <u>Ramirez-Ramirez</u>, the Ninth Circuit heavily relied on the Second Circuit's decision in

4 <u>Canady</u>, 126 F.3d 352.  In <u>Canady</u>, "the district court did not reconvene to announce the verdict;

5 instead, the district court mailed its decision and order convicting Canady on both counts to the

6 parties[, and] Canady first learned that he had been convicted two weeks later by reading a

7 newspaper."  126 F.3d at 359, 362 ("Ours is not the system of criminal administration that left

8 Franz Kafka's Joseph K. wondering 'Where was the Judge whom he had never seen? Where was

9 the high Court, to which he had never penetrated?' even as his death sentence was carried out."

10 (quoting Franz Kafka, *The Trial* 228-29 (Willa and Edwin Muir, trans., Schocken Books 1992)

11 (1937))).

12     Like in <u>Ramirez-Ramirez</u>, 45 F.4th at 1110, the Second Circuit noted the deprivation of

13 the right to a public trial was a structural error, and thus not subject to the harmless error review.

14 <u>Canady</u>, 126 F.3d 364 ("In view of our long history of public open trials, we hold that the failure

15 to publicly announce in open court the decision following a criminal bench trial is an error of

16 constitutional dimension that affects the framework of the trial itself and is not subject to

17 harmless error review.")  Thus, "[t]he only question that remain[ed] [was] what relief should be

18 ordered to remedy the constitutional violation."  <u>Id.</u>[10]

19     Here, Defendant Wright argues "there is no other remedy this Court can offer Mr. Wright

20 short of a new trial," (Mot. 7), like Canady argued to the Second Circuit.  <u>Canady</u>, 126 F.3d at

21 364 ("Canady argues that the only remedy is a new trial on the merits.").  The Second Circuit

22 disagreed, and instead remanded the action so that the district court could announce its decision

23

24 evidence against him . . .  [and] [t]he Court also cautioned in <u>Snyder</u> that the exclusion of a defendant from a trial proceeding should be considered in light of the whole record." (citing <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 54

25 S.Ct. 330, 78 L.Ed. 674 (1934))); <u>see also Snyder</u>, 291 U.S. at 107–08 ("[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.").

26 For the reasons explained herein, even if also a violation of the Due Process Clause, a remedy of a new trial is not appropriate in this instance.

27 [10]  The Court additionally notes that "a violation of Rule 43 may in some circumstances be harmless error.  <u>Rogers</u>

28 <u>v. United States</u>, 422 U.S. 35, 40, 95 S. Ct. 2091, 2095, 45 L. Ed. 2d 1 (1975); <u>see also</u> Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

in open court:

> We disagree. In *Waller,* the Supreme Court addressed the question of what remedy was appropriate when a defendant's public trial right has been violated and concluded that "the remedy should be appropriate to the violation." *Waller,* 467 U.S. at 50, 104 S.Ct. at 2217. The Court reasoned that what was required where a suppression hearing was conducted in violation of the Sixth Amendment was remand for a new suppression hearing, finding that "a new trial presumably would be a windfall for the defendant, and not in the public interest." *Id.* We believe that the appropriate remedy in this case is to vacate Canady's conviction, and remand to the district court to announce its decision in open court. In a case such as this, the court's announcement of the outcome of its deliberations, that is, whether the defendant is guilty or not guilty on each of the counts charged, together with the contemporaneous issuance of any written findings and conclusions pursuant to Fed.R.Crim.P. 23(c), fully vindicate the public trial guarantee and the defendant's right to be present at all stages of the trial. Unless the decision is different from that mailed to the parties, there will be no need to resentence the defendant.

*Canady*, 126 F.3d at 364.  The Second Circuit found that if it were to find a non-structural error and employ a harmless error analysis, such error would essentially always be harmless, and the right would be one in name only:

> We recognize that sending this case back for a public pronouncement of the court's decision may be viewed by some as an unnecessary formality. Yet if the act of public pronouncement in open court is constitutionally required, we can ascertain no other adequate remedy. We add that if we were to hold that the error was not structural and thus subject to harmless error analysis, it would almost always be held to be harmless. In this way, the right would become a right in name only, since its denial would be without consequence.

126 F.3d at 364.

Ramirez-Ramirez also argued the error required a new trial.  45 F.4th at 1112.  However, the Ninth Circuit recognized the Supreme Court "has cautioned that a defendant is not always entitled to a new trial as a remedy for violation of the public trial right, particularly if a new trial 'would be a windfall for the defendant, and not in the public interest.' "  *Ramirez-Ramirez*, 45 F.4th at 1112 (quoting *Waller v. Georgia*, 467 U.S. 39, 50, 104 S. Ct. 2210, 2217, 81 L. Ed. 2d 31 (1984)); *see also* *Rushen v. Spain*, 464 U.S. 114, 117–18, 104 S. Ct. 453, 455, 78 L. Ed. 2d 267 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the

trial and the right to counsel are fundamental rights of each criminal defendant [but] [a]t the same time and without detracting from the fundamental importance of [these rights], we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice . . . [c]ases involving [such constitutional] deprivations are [therefore] subject to the general rule that remedies should be tailored to the injury suffered ... and should not unnecessarily infringe on competing interests.").

Again, the Court finds Defendant has established a violation of his right to be present and right to a public trial. Ramirez-Ramirez, 45 F.4th at 1112 ("While a trial court is free to recess after the close of a bench trial to consider its decision further or to issue a written opinion elaborating on its oral finding of guilt, denying a criminal defendant the opportunity to be present in a public hearing at the time his guilt is determined undermines the fairness, integrity, and legitimacy of the judicial proceedings."). However, whether a violation of the right to be present, the right to a public trial, a violation of Rule 43, a violation of Defendant's due process rights, or a violation of all, the Court concludes the requested remedy of a new trial would result in a windfall to the Defendant to complete what is at this point, an "unnecessary formality," as the Court has already pronounced its guilty verdict in open court on October 4, 2022. See Ramirez-Ramirez, 45 F.4th at 1112 (because the court "already announced its finding of guilt in open court when it reiterated its finding during Nuñez's sentencing[,] [t]he constitutional requirement has therefore been fulfilled, and remand for the district court to announce its finding once again would be an 'unnecessary formality.' " (quoting Canady, 126 F.3d at 364)).[11]

---

[11] Even in Ramirez-Ramirez, although the Ninth Circuit remanded and vacated the judgment to allow the district court to make more specific factual findings under Rule 23(c), it did not find a new trial was warranted:

> In the time before the district court publicly announced its finding, however, Nuñez moved under Rule 23(c) for specific findings of fact. Citing the rule's requirement that such a motion must be made "before the finding of guilty or not guilty," Fed. R. Crim. P. 23(c), the district court denied it as untimely. This was erroneous. Although the district court had made its finding of guilt, it did so in violation of Nuñez's constitutional right to a public trial. The finding was therefore legally insufficient and should not have precluded Nuñez from seeking more specific findings under Rule 23(c). Under these circumstances, we hold that the remedy most appropriate to the violation is to vacate the judgment and remand to the district court to make specific findings of fact.

45 F.4th at 1112.  Again here, before the motion for a new trial was filed, the Court read the verdict at the October 4, 2022 status conference, and further ordered Defendant to advise the Court in writing if he requested a formal reading of the Memorandum Decision.  Thus, in addition to not being requested before the verdict, Defendant expressly

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.**

**ORDER**

Accordingly, for the above explained reasons, IT IS HEREBY ORDERED that Defendant Austin Wright's motion for a new trial filed October 12, 2022, (ECF No. 23), is DENIED.

IT IS SO ORDERED.

Dated:   **February 9, 2023**

UNITED STATES MAGISTRATE JUDGE

declined an offer of a reading of the Memorandum Decision in open Court.  See Fed. R. Crim. P. 23(c) ("If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion.").