1
2
3
4
5
6
7
8
9
10
11
12
13
14

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:21-po-00583-SAB |
| Plaintiff, | ORDER GRANTING MOTION FOR STAY OF SENTENCE |
| v. | (ECF No. 89) |
| AUSTIN WRIGHT, | |
| Defendant. | |

15      Before the Court is Defendant Austin Wright's ("Defendant") motion for a stay of sentence

16 of imprisonment pending the disposition of his appeal of the Court's denial of his motion to

17 dismiss the Petition for Violation of Probation for lack of jurisdiction, as well as his appeal of the

18 sentence imposed upon revocation of his term of probation. (ECF Nos. 89, 93.) Plaintiff United

19 States of American ("the Government") opposes the motion. (ECF No. 92.) Upon review of the

20 papers, and the Court's file in this matter, the Court will grant the motion and stay the sentence.

21                                          **I.**

22                                    **BACKGROUND**

23      On May 13, 2021, Defendant was issued a citation for trespassing onto the Edward Air

24 Force Base, in violation of 18 U.S.C. § 1382, in the State of California, Eastern District of

25 California—a Class B misdemeanor. (ECF No. 1.) On September 7, 2021, Defendant made his

26 initial appearance on the trespass citation before the Hon. Jennifer L. Thurston, then serving as a

27 magistrate judge in Bakersfield, California. (ECF No. 7.) At that appearance, the Government

28 indicated that it would not be seeking a custodial sentence upon conviction. (ECF No. 52,

Transcript of September 7, 2021 Proceeding ("Sept. 7, 2025 Transcript"), 2:25-3:4.)  The Court then stated that it was its intention to not impose jail time and informed Defendant that the maximum penalty for the trespass charge was a fine of $5,000, plus a $30 processing fee.  (Id. at 3:3-4, 4:7-10.)  When informing Defendant of his rights, the Court inquired multiple times whether Defendant wished to consult with an attorney.   (Id. at 2:17-19, 3:5-10, 3:19-21, 4:24-5:5.)  Defendant repeatedly stated that it was his desire to proceed without counsel.

On February 1, 2022, this case was reassigned to the Hon. Stanely A. Boone, the undersigned. (ECF No. 8.)  On March 4, 2025, Defendant appeared before the Court, with current defense counsel, "anticipating appointment to represent [Defendant]."  (ECF No. 51, Transcript of March 4, 2022 Proceeding ("Mar. 4, 2022 Transcript"), 2:13-15.)  The Court then went through the arraignment process, informing Defendant that the maximum penalties included up to "six months imprisonment," and that he had "the right to have court-appointed counsel if [he could not] afford counsel."  (Id. at 3:7-10, 4:1-3.)  Following these advisements, the Court appointed Defendant's current counsel to represent Defendant.  (Id. at 4:3-6.)

On August 2, 2022, the Court presided over a trial on the trespass charge and took the matter under submission.  (ECF No. 17.)  At trial, Defendant was represented by his current counsel.  (ECF No. 50, Transcript of August 2, 2022 Proceeding ("Aug. 2, 2022 Transcript"), 4:11-12.)

On September 28, 2022, the Court issued a written decision, finding Defendant guilty and rendering a guilty verdict.  (ECF No. 20.)  The Court read the verdict in open court on November 17, 2022.  (ECF No. 31.)  Defendant was represented at the verdict hearing by his current counsel. (ECF No. 47, Transcript of November 17, 2022 Proceeding ("Nov. 17, 2022 Transcript"), 3:15-17.)

A sentencing hearing was held on March 16, 2023.  (ECF No. 38.)  The Government argued for a sentence of 45 days in custody; Defendant argued for a no-custodial sentence.  (ECF No. 46, Transcript of March 16, 2023 Proceeding ("Mar. 16, 2022 Transcript"), 2:8-11.)  The Court then sentenced Defendant to, *inter alia*, 24 months of unsupervised probation, a total financial obligation of $ 1,040.00, and 150 hours of community service.  (See ECF No. 38.)  While

1    unsupervised, probation required adherence to various conditions, including not violating any

2    federal, state, or local laws.  (ECF No. 46, Mar. 16, 2022 Transcript, 19:11-14.)  In addition, the

3    written judgment included the conditions of probation.  (ECF No. 39, p. 2.).  The defendant

4    appealed the judgment on April 7, 2023.  (ECF No. 42.)

5        On June 29, 2023, the Hon. Ana de Alba, then-district court judge, presided over

6    Defendant's appeal in the underlying case and granted a stipulation to amend Defendant's sentence

7    by modifying only the fine and community service requirements.  United States v. Wright, No.

8    1:23-cr-00069-ADA, Stipulation and Order to Modify Conditions of Probation and Defendant's

9    Motion to Dismiss Appeal, ECF No. 57 (E.D. Cal. June 29, 2023).  All other conditions—

10   including the requirement to not violate any federal, state, or local laws—remained in place.

11   Defendant was represented by his current counsel during all stages relating to the modification of

12   his sentence.  See Wright, No. 1:23-cr-00069-ADA, Appeal of Magistrate Judge Decision, ECF

13   No. 42 (E.D. Cal. Apr. 7, 2023).

14       On May 21, 2024, Defendant was arrested in Colorado on two state charges, in violation of

15   the terms of his probation that required not violating any federal, state, or local law.  (See ECF No.

16   82, p. 2.)  On January 7, 2025, Defendant pleaded guilty to one of the state charges (disorderly

17   conduct by display of firearm), pursuant to a plea agreement.  The felony menacing charge was

18   dismissed also pursuant to the terms of the plea agreement.  (See id.)

19       On February 20, 2025, at a probation review hearing, the Court referred the matter to

20   probation given Defendant's alleged conduct was violative of the conditions of probation.  (ECF

21   No. 63.)  On March 6, 2025, Probation Officer Marlene K. DeOrian, filed a Petition of Violation of

22   Probation.  (ECF No. 64.)  As to the alleged violative conduct, the Petition stated: "The defendant

23   failed to obey all laws as he was arrested by Colorado State Patrol for Disorderly Conduct on May

24   21, 2024."  (Id.)  Immediately below the allegation of a probation violation appears the language:

25   "I declare under penalty of perjury that the following is true and correct."  (Id. at p. 2.)  The only

26   portion of the Petition that follows this language is the Officer DeOrian's signature.  (See id.)  The

27   Court issued a warrant on the basis of the Petition but held execution of the warrant until March

28   20, 2025, when Defendant was due back in court.  (Id.; see also ECF No. 67.)

1    On May 1, 2025, Defendant moved to dismiss the violation Petition, arguing that there was

2    an invalid warrant due to an insufficient attestation by Officer DeOrian.  (ECF No. 69.)  The

3    Government opposed and eventually obtained a declaration from Officer DeOrian in support of its

4    opposition.  (ECF Nos. 75, 78.)  On June 10, 2025, the Court denied Defendant's motion to

5    dismiss, finding Officer's DeOrian's attestation constitutionally sufficient.  United States v.

6    Wright, No. 5:21-po-00583-SAB, 2025 WL 1644126, at *5 (E.D. Cal. June 10, 2025).

7    On August 11, 2025, Defendant filed a sentencing memorandum, stating his intention to

8    admit to the alleged violation in the probation violation petition.  (ECF No. 82.)  Specifically,

9    Defendant admitted to being arrested in Colorado for disorderly conduct on May 21, 2024, and

10   pleading guilty to that charge on January 7, 2025.  (Id. at p. 2.)

11   On August 14, 2025, Defendant admitted to the sole charge in the violation Petition and

12   requested immediate sentencing.  (See ECF No. 84.)  Following argument by the parties, the Court

13   imposed a sentence of 10 days in custody and ordered Defendant to self-surrender on October 9,

14   2025.  The Court stated:

> The Government was making a strong pitch based upon [Defendant's] past criminal history and that's the commentary that's provided in why I felt that the sentence that I ultimately imposed was a fair and reasonable sentence.  Now something happened to that sentence later on which I'm not– I'm going to chalk it up, I don't agree with the way that it was handled in that I don't think you can stipulate a sentence.  I've never seen it in my entire career that you can stipulate a sentence.  Usually, you say there is error, and you kick it back to the sentencing judge.  But in formulating, I didn't give him jail time, upon, in part your argument that said listen give him a chance, he's you know here is what he can pay and that's why I extended the period and I frankly gave him community service and that went away.  The whole community service went away.  So, when the case came back, there was no other obligations because he had paid up to the fine and he had no community service.  So really there was no obligation on his part.  And that what he did was then he committed an offense.  So, to me, tell me, like cause you were you [] convinced me to not.  Because you [] saw what the government was asking for, a very strong sentence, and I disagreed with it by giving him zero time by the way.  Zero time.  And he had, if you recall, an extensive criminal history for a misdemeanor-based offense.  Not for a felony offense.

1    (ECF No. 89, p. 8-9; ECF No. 92, p. 4, Sentencing Audio Part 2–2:46-4:24.)[1]

2          Defendant argued that it appeared that the Court may be punishing Defendant for the

3    modification of his original sentence he received during his appeal.  The Court explained:

4    > I'm not penalizing the defendant.  But the point is [] there was a
> strenuous, strenuous request for a tremendous amount of jail time.

5
6    > * * *

7    > But I didn't give him jail.  That's my point.  My point is [] that I
> listened to the argument, looked at his criminal history, which was
> again, extensive criminal history for a misdemeanor type offense.

8    > Looking at that, that was a serious consideration.  He so then I
> fashioned what I thought was an appropriate sentence.  What

9    > you're saying is a district judge said that this is an appropriate
> sentence.  That's fine.  I'm accepting that.  The issue is [] now that

10    > here was the reasonable sentence, the defendant then subsequently
> commits an offense.  Jail time is potentially back on the record

11    > because you're looking at the entire . . . .  You're looking at the
> defendant's history, in factoring an appropriate sentence.

12

13    (ECF No. 92, p. 4, Sentencing Audio Part 3–4:07–5:00; Sentencing Audio Part 4–0:00–0:24.)

14          On August 28, 2025, Defendant filed the instant motion for a stay of sentence.  (ECF

15    No. 89.)  The Government opposed (ECF No. 92), and the motion has been fully briefed.  (ECF

16    No. 93.)

## II.

## LEGAL STANDARDS

17          Pursuant to Federal Rule of Criminal Procedure 38(b)(1), "a court must stay a sentence of

18    imprisonment" if the defendant is released pending appeal.  Fed. R. Crim. P. 38(b)(1).  Title 18

19    United States Code § 3143(b) governs bail pending appeal.  As relevant here,

20    > (b)

21    > . . . the judicial officer shall order that a person who has been
> found guilty of an offense and sentenced to a term of
> imprisonment, and who has filed an appeal or a petition for a writ
> of certiorari, be detained, unless the judicial officer finds—

22

23    > (A) by clear and convincing evidence that the person is not likely
> to flee or pose a danger to the safety of any other person or the
> community if released under section 3142(b) or (c) of this title; and

24

25

26

27

28    ---
[1] The Government and Defendant have provided their best attempt at a transcription that was provided in five parts. (See ECF Nos. 87; 89, 92.)  At this time, a formal transcript is not available on the docket.

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
    (i) reversal,
    (ii) an order for a new trial,
    (iii) a sentence that does not include a term of imprisonment, or
    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. § 3143(b).

With regard to § 3143(b)(B), the Ninth Circuit has held that "[t]he term 'substantial' defines the level of merit required in the question presented, and the phrase 'likely to result in reversal [or] an order for a new trial' defines the type of question that must be presented." United States v. Montoya, 908 F.2d 450 (9th Cir. 1990), quoting United States v. Handy, 761 F.2d 1279, 1280 (9th Cir.1985). A "substantial question is one that is fairly debatable or fairly doubtful. In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous." Handy, 761 F.2d at 1283 (cleaned up).

### III.

### DISCUSSION AND ANALYSIS

Defendant begins by arguing that he is not a flight risk and not a danger to the safety of the community, nor is his appeal for the purpose of delay. (ECF No. 89, p. 4-5.) Because Defendant seeks to invalidate the warrant upon which his Petition relies, Defendant focuses on what, in his view, are three substantial questions of law or fact for his appeal. (Id. at pp. 5-9.) The Government opposes, concentrating on the issue of whether Defendant's three offered questions for appeal are substantial. (ECF No. 92, pp. 6-9.) While the Court finds two of the questions presented by Defendant to not be substantial, the Court finds Defendant has provided one substantial question for appeal.

///

### A.    Whether Defendant Is a Flight Risk or a Danger to the Community

Defendant argues that the Court has never considered him a flight risk nor a danger to the community.  Defendant notes that in the past four years he has made every court appearance.  Moreover, Defendant observes that his underlying offense in this case was for trespassing, a Class B misdemeanor, and that his new law violation was for disorderly conduct, a misdemeanor, for which Defendant received a sentence of two days of imprisonment and two years of probation.  Finally, Defendant argues that the Court has previously recognized that Defendant is not likely to flee or pose a danger to the community when the Court allowed Defendant to self-surrender for service of the 10-day term of imprisonment, which was not objected to by the Government.

The Government did not address this argument, but in any event, the Court finds that Defendant is neither a flight risk nor a danger to the community within the meaning of the statute.

### B.    Whether Defendant's Appeal Is for the Purpose of Delay

Defendant argues that he is not seeking to delay proceeding by appealing the denial of the motion to dismiss or his sentence.  Defendant offers that he has no incentive to unnecessarily delay proceedings because he will still have to serve the custodial sentence should the revocation and sentence be upheld on appeal.

The Government did not address this argument.  Nevertheless, the Court finds that Defendant's appeal is not for the purpose of delay.

### C.    Whether Defendant's Appeal Raises Substantial Questions of Law or Fact

Defendant argues that he intends to raise three arguments on appeal that each present a substantial question of law or fact.  Defendant argues that the Government was bound by its representation at Defendant's initial appearance that it would not seek a custodial sentence.[2]  Next, Defendant argues that his sentence was procedurally and substantially unreasonable.  Finally, the Court addresses Defendant's argument that the Court erred in denying his motion to dismiss for lack of jurisdiction.  The Government takes each question in turn, arguing that no question demonstrates a reasonable probability or fair prospect of success on appeal.  The Court disagrees

---

[2] The Court discusses Defendant's questions in the order it views is the most logical.

1  with Defendant that his first two questions are substantial.  However, the Court finds Defendant's
2  third question to be substantial.

3        The Court must begin by addressing the legal standard for a stay of sentence where a
4  defendant is released pending appeal.  This niche area of the law is unequivocally governed by 18
5  U.S.C. § 3143(b), which the Ninth Circuit discussed at length in Handy.  761 F.2d at 1283.
6  However, the Government had directed the Court to legal standards for implementing a stay of
7  case or order generally.  (ECF No. 92, pp. 5-6.)  None of the precedent offered by the Government
8  discusses § 3143(b) or the separate area of law concerning a *stay of sentence where the defendant*
9  *is released pending the appeal*.  See United States v. Mitchell, 971 F.3d 993 (9th Cir. 2020)
10 (denying a stay of execution pending appeal, which is governed by the "traditional test for stays"
11 in combination with the Federal Death Penalty Act); Al Otro Lado v. Wolf, 952 F.3d 999 (9th Cir.
12 2020) (denying stay of a district court's grant of preliminary injunction pending appeal in a civil
13 context); Leiva-Perez v. Holder, 640 F.3d 962 (9th Cir. 2011) (granting stay of removal pending
14 determination of the merits in an immigration context).  Though the Court can still construe the
15 Government arguments as addressing the contended principle that Defendant raises substantial
16 questions in his appeal, the gloss on its analysis is tainted by the fact that the Government believed
17 that Defendant had to demonstrate a reasonable probability or fair prospect of success in his
18 appeal.  However, all that is required of Defendant is that he raise a substantial question of law or
19 fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of
20 imprisonment, or a reduced sentence to a term of imprisonment.  18 U.S.C. § 3143(b); Handy, 761
21 F.2d at 1283.  With this understanding, the Court discusses Defendant's offered questions.

22        1.      Defendant's Question Regarding Court-Appointed Representation and Sentencing

23        Defendant argues that the Government was required to "stand by its commitment to not
24 seek a term of imprisonment" from the September 2021 initial appearance through the sentencing
25 on Defendant's violation of probation.  In support of this, Defendant notes that during the initial
26 appearance, the Government stated that it was its position to not seek a custodial sentence, and
27 therefore, in Plaintiff's view, "the Court did not advise [Defendant] of his right to court-appointed
28 counsel."  (ECF No. 89, p. 7.)  In March 2022, Defendant requested court-appointed counsel, and

"neither the Court nor the government warned [Defendant] that, if the Court were to grant his request, the government's earlier commitment to not seek jail time [would become] void." (Id.)  In support of his position, Defendant relies on Alabama v. Shelton, which reaffirmed that a defendant must be represented on any offense "that actually leads to imprisonment even for a brief period." Alabama v. Shelton, 535 U.S. 654, 657 (2002), quoting Argersinger v. Hamlin, 407 U.S. 25, 33 (1972).

With the foregoing in mind, Defendant offers that the question presented on appeal would be "whether, in the absence of an advisement that acceptance of court-appointed counsel may expose a defendant to a term of imprisonment, the government must stand by its commitment not to seek a term of imprisonment." (ECF No. 89, p. 7.)[3]  The Court does not find that this is a substantial question for a few reasons.

To begin, the Court observers that Defendant's characterization of what occurred at the September 7, 2021 initial appearance is inexact.  Therefore, the Court quotes the relevant portions in their entirety:

> THE COURT:  This is United States of America versus Austin Wright.  This is Case No. 5:21-po-00583-JLT.  And sir, are you going to be representing yourself today?
>
> THE DEFENDANT: Today, yes.  Yes.
>
> THE COURT:  All right.  I'm not sure I understand.  Are you – do you want some time to consult a lawyer or to hire a lawyer?
>
> THE DEFENDANT:  No.  No.  Today, I'll be representing myself.  In the future, most likely.  I don't know if I can bring anybody at the next date.  So could I –
>
> THE COURT:  Absolutely.  But let me, let me ask you a few more questions.  Well, let me ask the Government, too.  Mr. Jefferson, is the Government seeking jail time in
>
> THE GOVERNMENT:  No, your Honor.
>
> THE COURT:  All right.  And I would not be willing to impose jail time, either.  Mr. Wright, we can, we can proceed one of two

---

[3] In his reply, Plaintiff frames the question as: "when a court has determined that a defendant is not entitled to court-appointed counsel because the court would not impose a term of imprisonment, the court has a duty to advise that defendant that the acceptance of court-appointed counsel exposes them to a risk of imprisonment they would not otherwise face." (ECF No. 93, p. 5.)  Therefore, the Court's will address the analysis regarding this question as well in this section.

ways.  I can go ahead and continue your case to allow you time to consult a lawyer.  I have no problem doing that, or you can proceed today and enter a plea, however you'd like to do it.  If you're intending on repre[sent], on hiring a lawyer, then I would suggest you do that first, but that's up to you, sir.  What would you like to do?

THE DEFENDANT:  No, I don't think I need a lawyer.

THE COURT:  Well, if –

THE DEFENDANT:  Can I bring a lawyer on – I –  I wanna – I wanna say not guilty today and set a date.  Can I bring in somebody later?

THE COURT:  Sure, absolutely.

THE COURT:  But again, if you like, I'm happy to just continue it for you to have a lawyer represent you the whole time.  If you don't want to do that – do you?

THE DEFENDANT:  No, there's no need, no need for that.

THE COURT: All right.

* * *

THE COURT:  If you do decide to consult a lawyer or hire a lawyer, your lawyer will just need to make an appearance and if you choose, if you wish in the meantime to, for the Court to consider appointment of counsel, then you can certainly send some sort of a notice to the Court or you can contact the Federal Defender's Office and they can assist you in making that request.  Does that make sense?

THE DEFENDANT:  Yeah.

THE COURT:  All right.  And if you have trouble finding the Federal Defender's number, just go ahead and give us a call back at the court and we will give you that information.  All right, sir?

THE DEFENDANT:  Okay.  Thank you so much.

(ECF No. 52.)  Thus, it appeared to the Court that Defendant was intending to invoke his right to

counsel but wanted to proceed on the initial appearance *pro se*.  Therefore, the Court did not, as

Defendant suggests, fail to advise Defendant of his right to court-appointed counsel at his initial

appearance.

Turning to the substance of Defendant's question, notwithstanding the parties' position(s)

regarding sentencing, even where the parties agree to a specific sentencing range, see Fed. R.

1   Crim. P. 11(c)(1)(C), the Court always retains discretion in sentencing.  See United States v.

2   Booker, 543 U.S. 220, 232 (2005) ("We have never doubted the authority of a judge to exercise

3   broad discretion in imposing a sentence within a statutory range.").  In other words, Defendant's

4   question presented holds no water because even if the Government had taken a position of a non-

5   custodial sentence on Defendant's probation violation, the Court always retained discretion to

6   impose a constitutional sentence.

7         This argument bleeds into Defendant's sub-argument that the Court purportedly failed to

8   advise Defendant in March 2022 that if he were to invoke his right to counsel, he would potentially

9   be exposing himself to a term of imprisonment.  Such an argument is in contention with the

10  constitutional right to counsel.  Essentially, it appears that Defendant would require district courts

11  to advise *pro se* defendants that, where the Government has taken a position of a non-custodial

12  sentence at some point, if such a defendant were to invoke his right to counsel, he would be

13  potentially exposing himself to the possibility of term of incarceration.  This sub-argument fails to

14  convince for at least two reasons.  First, and again, the sentencing court always retains discretion to

15  impose a constitutionally sound sentence notwithstanding the position(s) on sentencing by either

16  party.  Second, it would be antithetical to the promise of the Sixth Amendment's right to counsel to

17  require district courts to, in reality, advise *pro se* defendants to not invoke their right to counsel.

18  See Johnson v. Zerbst, 304 U.S. 458, 462 (1938).  Defendant's position would place the district

19  courts in an untenable double-bind: advise a defendant of his right to counsel (and have the

20  defendant argue on appeal that the court should have advised him to not invoke his constitutional

21  right) or advise defendants to not invoke their right to counsel (and have the defendant argue on

22  appeal that the court did not properly advise him of his constitutional right).  Further still,

23  Defendant's position would have a chilling effect on the right to counsel generally—it would

24  encourage *pro se* defendants to forego counsel whenever they get an inkling that the Government

25  might not recommend a custodial sentence.  Yet, as should be apparent, with counsel, charges may

26  be dropped, more favorable plea deals struck, or a case might be dismissed.  See Johnson, 304 U.S.

27  at 462-63 ("[The Sixth Amendment] embodies a realistic recognition of the obvious truth that the

28  average defendant does not have the professional legal skill to protect himself when brought before

1  a tribunal with power to take his life or liberty, wherein the prosecution is presented by

2  experienced and learned counsel.").  Though a defendant also retains the right to represent himself

3  in a criminal trial, <u>Faretta v. California</u>, 422 U.S. 806 (1975), a court advising a defendant of his

4  rights is fundamentally different than a court suggesting to a defendant to forgo a constitutional

5  right.

6       That Defendant has not located a case on such a topic is unsurprising, given the

7  implications of Defendant's position.  And while an absence of caselaw may at times indicate an

8  underdeveloped area of the law, the Court does not believe that to be the issue on this argument.

9  Here, absence of evidence is not evidence.[4]

10      In light of the foregoing, the Court does not find this question to be fairly debatable; this is

11  not a substantial question for purposes of 18 U.S.C. § 3143(b).

12       2.    <u>Defendant's Question Regarding Whether His Sentence Was Procedurally and</u>

13            <u>Substantially Unreasonable</u>

14      Defendant essentially proposes a vindictive sentencing question on appeal, stylized by

15  Defendant as receiving "a harsher penalty."  This too the Court finds is not a substantial question.

16  As discussed above, for the underlying offense, the Court imposed a sentence of two years of

17  unsupervised probation, a financial obligation in total of $1,040.00, and 150 hours of community

18  service.  Defendant appealed, as was his absolute right (Fed. R. Crim. P. 58(g)(B)), to the assigned

19  District Judge.  The parties then filed a stipulation, seeking a modification of the sentence to

20  reduce the fine and vacate the requirement of 150 hours of community service.  The District Judge

21  entered the stipulation.

22      At the August 14, 2025 sentencing on Defendant's probation violation, the Court discussed

23  its reasons for its original the sentence for the underlying action.  The Court went on to explain to

24  the parties its position that the Court seriously questioned the procedural propriety of the parties'

25  stipulation on appeal and then continued on to discuss the substantive reasons for its current

26

---

27  [4] Moreover, defense counsel acknowledges that she had been unaware of the Government's earlier statements regarding a no custodial sentence until during the appeal of the original sentence.  [Sentencing Audio Part 2–2:35–

28  2:40 ("This issue had not come to light for [defense counsel] until I was preparing for appeal.")].  Thus, there was no reliance by Defendant at sentencing that he would not receive a custodial sentence.

1  sentence.

2      For the benefit of the parties, the Court observes that a judgment and sentence from petty

3  offense or misdemeanor may be appealed to a district judge.  Fed. R. Crim. P. 58(g)(2).  Regarding

4  the scope of the appeal, "[t]he defendant is not entitled to a trial de novo by a district judge.  The

5  scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a

6  district judge."  Fed. R. Crim. P. 58(g)(2)(D).  That said, "[t]he district court may order that

7  proceedings in any misdemeanor case be conducted before a district judge rather than a United

8  States magistrate judge upon the court's own motion or, for good cause shown, upon petition by

9  the attorney for the Government."  18 U.S.C. § 3401(f).

10     Here, Defendant appealed his underlying sentence to the assigned District Judge, and

11  therefore, "[t]he scope of the appeal [was] the same as in an appeal to the court of appeals from a

12  judgment entered by a district judge."  Fed. R. Crim P. 58(g)(D).  The District Judge did not issue

13  an order that proceedings in Defendant's misdemeanor case be conducted before a district judge;

14  rather, the district judge relied upon 18 U.S.C. § 3401(f) to modify Defendant's sentence on

15  appeal.  United States v. Wright, No. 1:23-cr-00069-ADA, June 29, 2023 Stipulation and Order,

16  ECF No. 57 (E.D. Cal. June 29, 2023).  Accordingly, at the August 14, 2025 sentencing hearing,

17  the Court merely explained to the parties that in the normal course of an appeal (including an

18  appeal to a district judge from a misdemeanor), the parties should stipulate to a confession of error

19  and move to have the matter remanded for resentencing.[5]

20     Regarding the substance of the Court's reasoning at sentencing on the probation violation,

21  the Court observed that defense counsel had not argued at the original sentencing that a custodial

22  sentence was prohibited due to the earlier statements made by the prior judge and counsel for the

23  United States.  As defense counsel conceded, she had been unaware of the earlier statements

24

---

25  [5] The Court did not dispute that 18 U.S.C. § 3401(f) empowers a district judge to conduct proceedings over misdemeanor cases.  The issue here is that the assigned District Judge was sitting as an appellate judge, not a
26  sentencing judge, when granting the stipulation.  Had Defendant, or the parties, wished to have a district judge preside over the matter, they should have moved in the original case for such relief.  Following a Rule 58(g) appeal,
27  § 3401(f) does not explicitly allow for a district judge, who is sitting as an appellate judge, to switch—on appeal—to a presiding district judge, modify a sentence, and then "remand" the matter back to the magistrate judge. Moreover, the future case proceedings (probation violation) was presided over by the magistrate judge, not the district judge or
28  a district judge.

1    regarding no custodial sentence until during the appeal of the original sentence.  [Sentencing

2    Audio Part 2–2:35–2:40 ("This issue had not come to light for [defense counsel] until I was

3    preparing for appeal.")].  The Court then explained that it had previously chosen not to impose a

4    jail sentence in the underlying offense, relying on the arguments made at the original sentencing,

5    because of defense counsel's argument to give Defendant a "chance" and that other opportunities

6    to rehabilitate such as community service were sufficient, even in light of an extensive criminal

7    history.  Despite such assurances and a modification imposing no further obligations, Defendant

8    violated his probation by "commit[ing] an offense."  Thus, the Court explained its reason that a

9    custodial sentence was appropriate where Defendant had previously been given a "chance" and

10   nevertheless violated the terms of his probation despite minimal remaining requirements.

11          Defendant cites to no precedent regarding the standards for vindictive sentencing or

12   otherwise supports his position.  Trial judges are reversed by appellate courts.  Here, to suggest

13   that a change in a judge's original sentence by a higher court resulted in vindictiveness borders on

14   the absurd.  As the record demonstrates, Defendant asked for a chance to rehabilitate and to not

15   impose a sentence of imprisonment.  The Court took Defendant for his word and fashioned and fair

16   and reasonable sentence.  Defendant violated his probation.  The Court thus determined that the

17   chance it offered Defendant had been squandered and imposed a fair and reasonable sentence for

18   his violation of probation.

19          In light of the foregoing, Defendant has not demonstrated that this question is fairly

20   debatable, and therefore, this question is not a substantial question.

21          3.     Defendant's Question Regarding the Denial of His Motion to Dismiss

22          Defendant moved to dismiss the Petition on the ground that no Fourth-Amendment

23   compliant warrant issued prior to the expiration of his term of probation and, thus, the Court did

24   not have jurisdiction to revoke his probation under 18 U.S.C. § 3565(c).  Specifically, Defendant

25   argued that the probation officer did not assert or attest that the allegation of a probation violation

26   was true; instead, after setting forth the allegation of a probation violation, the probation officer

27   declared that "the following" was true and correct; the only portion of the Petition that followed

28   was the probation officer's signature.  (ECF No. 89, p. 5-6.)  On appeal, Defendant proposes the

1  following question: whether the Fourth Amendment's oath-or-affirmation requirement is satisfied

2  where the plain language of a declaration of truthfulness does not encompass the allegation of a

3  probation violation.  (Id. at p. 6.)  The Court finds this to be a substantial question, within the

4  meaning of 18 U.S.C. § 3143(b).

5        In denying Defendant's motion to dismiss, the Court relied upon United States v. Bueno-

6  Vargas, 383 F.3d 1104 (9th Cir. 2004).  While Bueno-Vargas outlined the governing legal

7  standard, it was not dispositive of the factual application in this case.  This Court, as is its charge,

8  then applied the law to the facts and made a determination, denying the motion to dismiss.

9  Notwithstanding that determination, the Court believes Defendant raises a substantial question that

10  implicates warrants, an officer's intent manifested in a petition, and what seemingly appears to be

11  a scrivener's error.  The Court also observes the related issue of whether an officer may later

12  "cure" any such alleged error though a later declaration.

13        Though the Government's response to this generally traces the Court's order denying the

14  motion to dismiss, again, the question before the Court on a motion to stay a sentence is not on the

15  merits of the claim but whether Defendant raises a substantial question for appeal.  Accordingly,

16  applying this standard, the Court finds that on this issue Defendant raises a substantial question for

17  appeal.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**IV.**

**CONCLUSION AND ORDER**

In sum, the Court finds that Defendant is not a flight risk or a danger to the community; Defendant's appeal is not raised for the purpose of delay; and Defendant has raised one substantial question for appeal that may result in reversal.[6]  Therefore, the Court GRANTS the motion for a stay of sentence.   (ECF No. 89.)   The Court HEREBY ORDERS Defendant's sentence is STAYED pending his appeal.

However, should Defendant be arrested and/or convicted of any new law violation (federal, state, or local) during the pendency of this appeal, the Court will revoke the stay and order him to report within 10 days of the order.

IT IS SO ORDERED.

Dated:   **September 15, 2025**

STANLEY A. BOONE
United States Magistrate Judge

---

[6] While the Court has analyzed whether, in its view, Defendant has raised substantial questions for appeal in his motion for a stay of sentence, nothing in this order should be construed as limiting the arguments Defendant may raise on appeal.